# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45852

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 28, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STEVEN PATRICK DROOGS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Judgment of conviction and unified sentence of sixteen years, with a minimum period of confinement of six years, for battery with the intent to commit a serious felony, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Steven Patrick Droogs appeals from his judgment of conviction for battery with the intent to commit a serious felony. Droogs argues the district court erred in denying his motion to suppress evidence after he was unlawfully detained by an officer. Droogs also argues the district court abused its discretion by imposing an excessive sentence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Deputy Larsen encountered Droogs walking alone down a rural road in a wooded area on a cold, snowy morning. Deputy Larsen initiated contact with Droogs to inquire into his well-being and to offer him a ride. Droogs responded he was on his way to a friend's house. When Deputy Larsen asked Droogs for his identification, Droogs responded that he did not have any

1

but identified himself using a false name, Patrick Nichols. Deputy Larsen testified Droogs acted "a little bit fidgety" and "kind of nervous" as Deputy Larsen attempted to run the name Droogs gave through dispatch.

While waiting for dispatch, Deputy Larsen asked Droogs to step over to the patrol car so Deputy Larsen could check for weapons before giving Droogs a ride. Droogs did as he was asked, which included putting his hands behind his back. When Droogs did so, Deputy Larsen grabbed Droogs's hands to start a pat-down search. At that point, Droogs jerked his hands away and started running from Deputy Larsen.

Deputy Larsen followed Droogs on foot and maintained visual contact. During pursuit, Deputy Larsen repeatedly ordered Droogs to stop. At one point, Deputy Larsen unsuccessfully deployed his taser to stop Droogs. Deputy Larsen testified that, while he was pursuing Droogs, Droogs yelled expletives, said Deputy Larsen would have to kill Droogs to stop him, and said he was carrying an assault rifle.

Eventually, Droogs approached a house, communicated with one of its occupants, ran around the side of the house, and entered it. Thereafter, several other law enforcement officers arrived on the scene, including Deputy Nelson (a canine handler) and his canine (Pogo). About ninety minutes after Droogs entered the house, the occupants--other than Droogs--emerged from the house. After obtaining the owner's consent, Deputy Nelson and Pogo entered the house and located Droogs in the attic. During Deputy Nelson's attempts to remove Droogs from the attic, Droogs hit Deputy Nelson and Pogo with insulation, pushed Deputy Nelson out of the attic, punched him in the head, and attempted to choke Pogo. After being sprayed with pepper spray, Droogs was finally removed from the attic and was arrested.

The State charged Droogs with misdemeanor providing false information to a law enforcement officer, misdemeanor obstructing an officer, and felony battery on an officer and alleged Droogs is a persistent violator. Droogs filed a motion to suppress, seeking to exclude generally all "statements, observations, evidence, information or any other fruits obtained as a result of [his] detention, arrest, search, seizure, and subsequent questioning." The district court denied the motion. Although the district court ruled Deputy Larsen's initial detention of Droogs was unlawful, it concluded there was no evidence causally connected to the unlawful seizure to suppress. Further, the court concluded that Droogs was no longer detained after he fled and that

2

any evidence obtained while Droogs was in the house was "too disconnected" to the unlawful seizure.

After the denial of his motion to suppress, Droogs entered an *Alford*[1] plea to battery with the intent to commit a serious felony and reserved his right to appeal the denial of his motion to suppress. In exchange, the State agreed to recommend a unified sentence of twenty years with ten years determinate. At the sentencing hearing, Droogs asked for a unified sentence of five years with three years determinate. The district court imposed a unified sentence of sixteen years with six years determinate to run consecutively with Droogs's sentence for a prior involuntary manslaughter conviction. Droogs timely appeals both the denial of his motion to suppress and his sentence.

## II.

## ANALYSIS

### A.    The District Court Did Not Err in Denying Droogs's Motion to Suppress

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable seizures. To determine whether a seizure has occurred, the defendant must prove that "under all the circumstances surrounding the encounter, a reasonable person would [not] have felt free to leave or otherwise decline the officer's requests and terminate the encounter." *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999). When an officer, by means of physical force or show of authority, restrains the liberty of a citizen, a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).

---

[1]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

The district court found Deputy Larsen unlawfully detained Droogs when Deputy Larsen "ordered [Droogs] to place his hands behind his back, and then held them while patting him down without justification." Droogs contends that, because this unlawful detention was "flagrant," the district court erred by denying his motion to suppress. The State does not dispute Deputy Larsen unlawfully detained Droogs initially, but it argues Droogs failed to meet his burden of identifying any evidence derived from that unlawful detention.

Droogs had the burden to identify specifically what evidence he sought to suppress and the factual nexus between that evidence and Deputy Larsen's unlawful conduct. "[S]uppression of evidence under the exclusionary rule is appropriate only where the challenged evidence is *in some sense*, whether direct or indirect, the product of illegal government activity." *State v. Keene*, 144 Idaho 915, 918, 174 P.3d 885, 888 (Ct. App. 2007); *see also Segura v. United States*, 468 U.S. 796, 815 (1984); *State v. McBaine*, 144 Idaho 130, 133, 157 P.3d 1101, 1104 (Ct. App. 2007). When "a defendant moves to suppress evidence allegedly gained through unconstitutional police conduct, the defendant bears an initial burden of going forward with evidence to show a factual nexus between the illegality and the state's acquisition of the evidence." *Keene*, 144 Idaho at 918, 174 P.3d at 888. Evidence will not be excluded unless the illegality is at least the "but for" cause of the evidence's discovery. *McBaine*, 144 Idaho at 133, 157 P.3d at 1104. The defendant needs to show the evidence's discovery was a product or result of the unlawful police conduct. *Id.* at 134, 157 P.3d at 1105. If a defendant fails to meet this burden, his motion to suppress necessarily fails. *Id.* ("Where a defendant has not shown the requisite nexus between the unlawful police activity and the challenged evidence, suppression must be denied.").

Droogs's motion to suppress failed to meet this burden. In his motion, Droogs generally identified for suppression all "statements, observations, evidence, information or any other evidentiary fruits obtained as a result of the detention, arrest, search, seizure, and subsequent questioning." Droogs failed, however, to identify any substantive evidence, inculpatory statements, or contraband obtained as a result of the unlawful detention. On appeal, Droogs again simply reiterates his general request and provides no specific statements, observations, evidence, or other information to be suppressed. Thus, Droogs has not met his burden of showing a causal connection between Deputy Larsen's unlawful detention and the discovery of relevant evidence.

4

Droogs's argument that the flagrancy of Deputy Larsen's conduct warrants the exclusion of all the evidence obtained from Droogs's encounter with law enforcement also fails. Droogs's argument is premised on the attenuation doctrine:

> The attenuation doctrine allows evidence to be admitted "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'"

*State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017) (quoting *Utah v. Strieff*, ___ U.S. ___, ___, 136 S. Ct. 2056, 2061 (2016)). "There are three factors for a court to consider when determining whether unlawful conduct has been adequately attenuated." *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). Those factors are: "(1) the elapsed time between the misconduct and the acquisition of the evidence, (2) the occurrence of intervening circumstances, and (3) the flagrancy and purpose of the improper law enforcement action." *Id.* These factors are analyzed and weighed together under the totality of the circumstances. *See State v. Fenton*, 163 Idaho 318, 321, 413 P.3d 419, 422 (Ct. App. 2017) ("The test only requires a balancing of the relative weights of all the factors, viewed together, in order to determine if the police exploited an illegality to discover evidence.").

Under this analysis, Droogs argues only that "Deputy Larsen's misconduct was flagrant enough to warrant [the] exclusion of evidence discovered as a result of the stop." Regardless of the purported flagrancy of Deputy Larsen's conduct, none of the other factors of the attenuation doctrine supports Droogs's argument. Droogs concedes "his flight [from Deputy Larsen] was an intervening circumstance." Further, Droogs does not dispute the district court's finding that the time between the unlawful detention and the encounter in the attic was approximately three hours and was "too great with too many intervening circumstances between them." Finally, Droogs does not dispute Deputy Larsen's purpose was not improper. As the district court found, "the purpose of Deputy Larsen's misconduct was investigatory in nature and motivated by a sense of officer safety and not for the purposes of a fishing expedition." *See State v. Bigham*, 141 Idaho 732, 734-35, 117 P.3d 146, 148-49 (Ct. App. 2005) (concluding "an officer's act of stopping and questioning a person who is walking down a residential street at 4:00 a.m. is not outrageous").

Deputy Larsen was performing a community caretaking function to check on Droogs, who was walking alone on a very cold, snowy morning. Under the totality of the circumstances and weighing all the attenuation factors together, any evidence (assuming Droogs had identified

any) obtained as a result of the illegal seizure of Droogs was too attenuated to require suppression. Moreover, although Droogs does not challenge the district court's other rulings on appeal, the court correctly concluded any evidence gathered while Droogs was fleeing from Deputy Larsen cannot be suppressed. *See, e.g.*, *State v. Zuniga*, 143 Idaho 431, 436, 146 P.3d 697, 702 (Ct. App. 2006) (concluding when defendant flees he is no longer unlawfully detained). Likewise, the district court correctly concluded any evidence regarding Droogs's attack on law enforcement while in the attic cannot be suppressed. *See, e.g.*, *State v. Lusby*, 146 Idaho 506, 509, 198 P.3d 735, 738 (Ct. App. 2008) (concluding "when a suspect responds to an unconstitutional search or seizure by a physical attack on the officer, evidence of this new crime is admissible notwithstanding the prior illegality") For these reasons, the district court did not err in denying Droogs's motion to suppress.

**B.     The District Court Did Not Abuse Its Discretion When Sentencing Droogs**

Droogs challenges the district court's unified sentence of sixteen years with six years determinate. Droogs contends his sentence is excessive in light of mitigating circumstances. He argues that despite his troubled upbringing, his current drug use, and his previous crime involvement, he feels accountability and remorse for his actions and has the motivation to become a productive, law-abiding member of society. He argues these goals for the future favor a lower sentence.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable on the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When

6

reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Applying these standards, and having reviewed the record in this case, we cannot conclude the district court abused its discretion. During sentencing, the district court expressly noted Droogs has been and remains a danger to society. That the court did not elevate Droogs's alleged mitigating factors over the need to protect society is not an abuse of discretion. *See State v. Felder*, 150 Idaho 269, 276-77, 245 P.3d 1021, 1028-29 (Ct. App. 2010). The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 877, 881 (1994).

## III.

## CONCLUSION

Droogs failed to meet his burden of specifically identifying for suppression the substantive evidence purportedly obtained during Deputy Larsen's unlawful detention. Further, the district court correctly concluded any evidence gathered after Deputy Larsen's unlawful detention was too attenuated for purposes of suppression. The district court did not abuse its discretion by imposing a unified sentence of sixteen years with six years determinate. Accordingly, Droogs's judgment of conviction and sentence and the district court's denial of Droogs's motion to suppress are affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.